UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DR. JAIME F. RUBIO,

      Plaintiff,

v.                                     Case No: 8:06-cv-744-T-23EAJ

FLORIDA DEPARTMENT OF HEALTH,
MANATEE COUNTY HEALTH
DEPARTMENT,

      Defendant.

_____/

## ORDER

      Dr. Jaime F. Rubio ("Rubio") sues the Florida Department of Health, Manatee County Health Department ("MCHD").  Rubio alleges (Doc. 7) violation of both Title VII, 42 U.S.C. § 2000e, and the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes.  Rubio withdrew his claim for "National Origin Discrimination" (Count I) and his Title VI claim (that portion of Count II alleging mistreatment of minority patients by employees of MCHD) (Doc. 24).  MCHD moves (Doc. 19) for summary judgment on Rubio's claim that MCHD unlawfully terminated his employment because he complained that MCHD hired too few minority employees.

## BACKGROUND

      MCHD employed Rubio from November, 2001, through May, 2005.  Neither party disputes that Rubio's medical license limits his practice to an "area of critical need" (Doc. 21 Ex. 13).  MCHD's director, Dr. Gladys Branic ("Branic"), hired Rubio on

November 9, 2001, and supervised him throughout his employment (Doc. 7 ¶ 2).  In

April, 2005, the DeSoto County Health Department offered Rubio a job (Doc. 7 ¶ 2).

Rubio informed Branic of his intention to accept the DeSota County offer "because [he]

was concerned about MCHD's mistreatment of its predominant Hispanic clientele and

failure to hire Hispanic employees . . . ." (Doc. 7 at ¶ 3).  Rubio alleges that "days later"

Branic offered him a "ten percent raise," a promotion "to supervisor," and promised to

"mak[e] changes to the clinic as a result of what Dr. Rubio had told her a few days

earlier" (Doc. 7 at ¶ 5).  Rubio further alleges that "several days" later Branic rescinded

the offer putatively because she was "uncomfortable" with the status of his medical

license and "because the Manatee County medical community would not welcome a

medical director with a 'restricted medical license' " (Doc. 7 ¶¶ 6-7; Doc. 24 ¶ 8).  Rubio

alleges that Branic conditioned Rubio's continued employment on his passing an exam

for an "unrestricted medical license" (Doc. 7 ¶ 7), that Rubio declined the examination,

that Branic asked for Rubio's resignation (Doc. 7 ¶¶ 7), that Rubio declined to resign,

and that Branic terminated Rubio on May 9, 2005 (Doc. 7 at ¶ 3).

## **DISCUSSION**

The moving party is entitled to judgment as a matter of law absent a genuine

issue of material fact.  Rule 56(c), Federal Rules of Civil Procedure; Matsushita Elec.

Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Of course, not every

fact dispute between the litigants defeats summary judgment.  "[T]he requirement is that

there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986) (emphasis in original).  Neither party disputes that MCHD terminated Rubio.

To establish a prima facie claim for retaliation under Title VII Rubio must prove that "(1) [he] participated in an activity protected by Title VII; (2) [he] suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision."  Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000); see also Murry v. United States Attorney General, 233 Fed. Appx. 911, 912 (11th Cir. 2007).[1]

Rubio alleges that MCHD terminated him because of his objecting to "the lack of Hispanic employees at MCHD . . . ." (Doc. 7 at ¶ 4).  To claim retaliatory discharge the plaintiff must allege and prove that he "engaged in an activity protected by Title VII."  Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987); Murry, 233 Fed. Appx. at 912.  42 U.S.C. § 2000e-3(a) states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]."

Like Rubio, the plaintiff in Phillips v. Pepsi-Cola General Bottlers, Inc., 927 F.2d 605, 1991 WL 27425 (6th Cir. Mar. 5, 1991), argued "that his attempts to increase the representation of minorities and women in certain positions at Pepsi [fell] within the ambit of protected activity under the opposition clause."  1991 WL 27425 at *2.  This argument fails.  "[T]here is no indication that the plaintiff's suggestions were, in any way,

_____

[1] "[D]ecisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII."  Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998).

a response to discriminatory policies . . . ."  1991 WL 27425 at *2; see also Munshi v. Alliant Techsystems, Inc., 2001 WL 1636494 at *6 (D. Minn. Jun. 26, 2001) (holding that the plaintiff's request that his supervisor "advocate for more minority and female representation in high-level management . . . [did] not constitute protected activity within the meaning of § 2003e-3.").  "Title VII . . . does not demand that an employer give preferential treatment to minorities or women."  Texas Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 1096 (1981).  Further, "[i]t does not require the employer to restructure his employment practices to maximize the number of minorities and women hired."  450 U.S. at 1096-97 (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577-78 (1978); see also E.E.O.C. v. Martin Marietta Corp., 819 F. Supp. 1030 (M.D. Fla. 1993).  In short, "Title VII does not require the adoption of affirmative action programs." Holden v. Illinois, Inc., 793 F.2d 745, 749 (6th Cir. 1986).[2]  Nor does Rubio present any other evidence to show that his subjective belief that the small number of Hispanic employees at MCHD was a consequence of discriminatory hiring practices was objectively reasonable.  See Little v. United Technologies, Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997) (to prove a claim under Section 2000e-3(a), the plaintiff

---

[2] The plaintiff seeks to distinguish Holden because the plaintiffs there "complained expressly about affirmative action compliance rather than unlawful discrimination" (Doc. 24 at 9).  The plaintiff argues a distinction without a difference.  Although an organization may implement a plan to increase minority hiring, the absence of a plan at MCHD does not transform Rubio's complaint of a lack of minority employees into protected activity.  Neither an employee's complaint that an organization violates its affirmative action plan by failing to hire minorities nor an employee's complaint that an organization without an affirmative action plan discriminates by not hiring enough minorities is protected activity within the ambit of Title VII.  See Burdine, 450 U.S. at 1097 ("Title VII does not require the employer to restructure his employment practices to maximize the number of minorities and women hired.").

"must not only show that he subjectively . . . believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented."). Rubio's retaliation claim fails because his voicing aspirations and dissatisfactions about the results of MCHD's minority hiring is not "protected activity," i.e., the equivalent of opposing a practice made unlawful by Title VII.

Finally, even if Rubio engaged in a "protected activity," the defendant offers a "legitimate, non-retaliatory reason[]" for his termination – Rubio's limited medical license. Rubio concedes that his license is limited (Doc. 24 at 98) and that Branic offered him the opportunity to retain his job if he obtained an unlimited medical license (Doc. 24 at 90). Because the defendant provides evidence of a "legitimate, non-discriminatory reason[] for the challenged employment action . . . the initial presumption of discrimination accompanying the prima facie case" of discrimination is eliminated. Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). The burden shifts to the plaintiff to "demonstrate that the proffered reason was not the true reason for the employment decision." Burdine, 450 U.S. at 256. "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pre-textual, the employer is entitled to summary judgment on the plaintiff's claim." Chapman v. AI Transport, 229 F.3d 1012, 1024-25 (11th Cir. 2000).

Rubio concedes both that his medical license is limited and that he refuses to obtain an unlimited medical license (Doc. 24 at 90, 98). Branic testified that MCHD's

contract with Manatee County allows only a fully licensed physician to provide medical services to non-critical need patients (Doc. 21 at 30-31).  Rubio admits that he services no non-critical need patients (Doc. 24 at 98-100).  MCHD demonstrates a legitimate requirement that an MCHD physician provide medical care to the entire community that MCHD serves.  "[T]he proffered reason clearly meets the test of being one that might motivate a reasonable employer."  Chapman, 229 F. 3d at 1033 (finding the defendants entitled to summary judgment because the plaintiff failed to produce evidence that the employer's "proffered non-discriminatory reason . . . was a pretext for . . . discrimination.").  MCHD's decision to terminate Rubio because of his limited medical license (and for his refusal to exert himself to procure the unlimited license) is patently reasonable, and Rubio cannot prove by a preponderance of evidence that MCHD's stated reason for terminating him was pretextual.

## CONCLUSION

Accordingly, MCHD's motion for summary judgment (Doc. 19) is **GRANTED**.[3] The Clerk is directed to (1) enter judgment in favor of the defendant and against the plaintiff, (2) terminate any pending motion, and (3) close the case.

ORDERED in Tampa, Florida, on October 23, 2007.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[3]  The arguments that mandate granting summary judgment as to Plaintiff's Title VII claims also apply to Plaintiff's state law civil rights claim.  Harper, 139 F.3d at 1387-89.